

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ANA RAMIREZ, | ) | |
| | ) | |
| Appellant, | ) | WD86598 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | August 27, 2024 |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

### Appeal from the Labor and Industrial Relations Commission

### Before Division Two: W. Douglas Thomson, Presiding Judge, Karen King Mitchell, Judge, and Janet Sutton, Judge

Ana Ramirez (Ramirez) appeals the Labor and Industrial Relations Commission's (Commission) decision affirming the Appeals Tribunal's (Tribunal) determination denying her application for waiver of recovery of overpayment of Federal Pandemic Unemployment Compensation (FPUC) benefits (waiver application). Specifically, Ramirez appeals the Commission's decision that she was at fault for the overpayment. We reverse the Commission's determination, finding it is not supported by competent and substantial evidence and, thus, that Ramirez is entitled to a waiver of recovery of overpayment of her FPUC benefits.

**Factual and Procedural Background**

*The Record on Appeal*

Before we discuss this case's factual and procedural background as best as we can discern, we first emphasize the complete administrative confusion reflected in the record.

This case before us is one of six appeals at the administrative level arising from one claimant, Ramirez, and her receipt of state primary unemployment insurance benefits and federal FPUC benefits in 2020. From what we glean from the record before us, the procedural history of all six cases is murky, at best. Based on preliminary information in Ramirez's brief, we asked the parties to clarify which administrative appeals are pending and what legal issue each appeal purports to address. The parties clarified as follows:

1. 2226780: Whether an assessment of overpayment of the entire underlying state unemployment benefits of $762.00 should be made. The timeliness of the appeal and good cause for failure to participate in the telephone hearing were also at issue. This appeal has since been withdrawn;

2. 2236659: Whether an order of assessment of overpayment of the entire associated FPUC benefits of $7,800.00 should be made. The timeliness of the appeal and good cause for failure to participate in the telephone hearing were also at issue. This is *currently* on appeal before the Commission;

3. 2236658: Whether an overpayment of the unemployment benefits of $762.00 was paid to Ramirez due to unintentional error or omission by her, and whether an assessment should be made. The timeliness of appeal was also an issue. This is *currently* pending before the Commission according to Ramirez. According to the Division of Employment Security (Division), however, a decision was rendered and not appealed to the Commission;

4. 2236784: Whether Ramirez was disqualified from receiving unemployment benefits because she earned wages after April 16, 2020, left work voluntarily, or was discharged for misconduct. A deputy determined she was ineligible. The timeliness of appeal and good cause for failure to participate in the telephone hearing were also at issue. The Commission issued a decision only as to finding of an untimely appeal without reaching the merits. This case is now currently on appeal to this Court in a different case, WD87145; and

5. 2226786: Whether Ramirez was overpaid FPUC benefits of $7,800.00 due to unintentional error or omission by her. The timeliness of Ramirez's appeal and good cause for failure to participate in the telephone hearing are also at issue. This is *currently* before the Commission without a decision.

2

The issue before us here, whether Ramirez was entitled to waiver of recovery of overpayment of FPUC benefits following her application, *is the last procedural and substantive domino in this chain of appeals*. Yet, if the information given to us is correct, this final domino was the only determination made final by the Commission when this appeal was filed with our Court. Ramirez had asked to have all of her appeals consolidated but the Tribunal never ruled on her request and, clearly, these cases were never consolidated.

Adding further to this procedural jumble, the Commission included several documents from these five other cases in our current record on appeal. The Commission's underlying appeal number for this case was 2240844. Though the Commission knew case number 2240844 was currently before us, it nevertheless erroneously included several documents in the legal file from other cases before the Tribunal or the Commission that were not part of the underlying proceedings in case 2240844.[1] The Commission also submitted several identical copies of documents throughout the legal file.

So confused was this record on appeal, that the Commission has since supplemented the legal file on appeal *three times*. First, we granted Ramirez's motion to order the Commission to supplement the record to include "Claimant's Exhibit 1" from the Tribunal's hearing, which was admitted into evidence without objection. The Commission supplemented the record the first time by adding "Claimant's Exhibit 1."

Second, this Court requested the Commission supplement its legal file and provide us with Ramirez's waiver application—the central issue of this appeal—because the Commission

---

[1] The Commission erroneously included (1) an entry of appearance in cases 2226784 and 2226786, (2) applications for review in cases 2226784 and 2226786, and (3) a five-page excerpt from a transcript in case 2226780, submitted to our Court twice.

neglected to include this central document. The Commission filed Ramirez's waiver application thereafter in a second supplemental legal file.

Third, this Court requested the Commission clarify which of the nineteen pages attached to the end of the transcript on appeal were part of the "Division's Exhibit 1" in the underlying hearing for case number 2240844. Rather than clarifying which pages constituted this exhibit, the Commission filed a third supplemental legal file including all but one page originally attached to the transcript and labeled those pages "Division Exhibits 1." This third supplemental legal file also resubmitted Ramirez's waiver application. All three supplemental legal files were filed with this Court after the Commission certified that the initial legal file "constituted the true, accurate, *and complete record* reviewed by the Commission in this matter[.]" (Emphasis added).

In addition to a piecemeal legal file, the transcript on appeal contains testimony from three of the additional appeals before the Tribunal that were heard at the same time as this case but not consolidated. In a hearing on June 20, 2023, the Tribunal heard four cases, with a Benefit Program Supervisor testifying only in 2240844 and Ramirez testifying in all four.[2] The transcript from this multi-case hearing included this case, 2240844, and appeal numbers 2226780, 2236659, and 2236658. On review of the entire transcript filed with us, it is clear the Appeals Referee failed to keep each case legally and factually distinct during the hearing.

We cannot decipher what legal issues relating to Ramirez's receipt of Missouri or FPUC benefits the Tribunal intended to address in the individual appeals during the June 2023 hearing nor what testimony pertained to each case, since the Appeals Referee frequently bounced back and forth between the cases. Additionally, the Appeals Referee combined the discussion of the

---

[2] We note that the Tribunal's Decision stated, "A witness for the Division of Employment Security did not participate," in the June 20, 2023, appeal hearing, but the Benefit Program Supervisor clearly testified during this hearing as reflected in the transcript.

4

timeliness of some of the appeals, again intertwining the multiple appeals that were not consolidated.

For purposes of addressing this appeal, we look only to the testimony elicited in the portion of the transcript in which the Appeals Referee specifically called case 2240844 for hearing. We do not consider any testimony following the conclusion of case 2240844 in the transcript, because such testimony was given on issues not before us.

Without a clear, discernable record on appeal provided to this Court, we attempt to convey the following pertinent facts.

***Underlying Employment History***

In March 2020, Ramirez was a full-time student at the University of Missouri working at a Restaurant in Columbia, Missouri, and on a very limited part-time basis at a Veterinary Clinic.

On March 17, 2020, the Restaurant laid off Ramirez due to the COVID-19 pandemic. At the time, Ramirez cared for her mother who was undergoing cancer treatment. Ramirez was concerned about COVID-19 transmission, and her remaining employer, the Veterinary Clinic, did not have a mask requirement at the workplace.

Ramirez was overwhelmed by her personal situation and asked the Veterinary Clinic if it would temporarily take her off the work schedule until the pandemic and her mother's situation improved. The Veterinary Clinic temporarily took Ramirez off the schedule and a manager told Ramirez the Clinic would welcome her back when she returned. Ramirez's last day of work was April 16, 2020, and she planned to return when "everything was back to normal."

Ramirez filed for unemployment benefits, which the Division approved, for a benefit period beginning on March 22, 2020. On April 9, 2020, and April 16, 2020, Ramirez reported that she was working part-time and that her last employer was the Veterinary Clinic.

At some unknown point, Ramirez contacted the Veterinary Clinic and asked to return. The Veterinary Clinic's owner told Ramirez that she was fired and not welcome back as an employee. The owner's response surprised Ramirez because she had believed she would return to work there.

From April 12, 2020, to July 25, 2020, Ramirez filed weekly requests for and received unemployment benefits. Ramirez returned to work at the Restaurant around June 25, 2020, working less than one day per week. When Ramirez went back to work at the Restaurant, Ramirez then reported that she was working again on a limited part-time basis, and reported that her last employer was the Restaurant. In total, from April 12, 2020, through July 25, 2020, Ramirez received $7,800.00 in FPUC benefits.

### *The Determinations Denying Waiver of Recovery of Overpayment*

At some unknown point, the Veterinary Clinic filed a protest against Ramirez's rights to receive unemployment benefits. On August 27, 2021, *one year* after Ramirez received benefits, the Division determined that she was overpaid $7,800.00 in FPUC benefits for the period of April 12, 2020, to July 25, 2020, "due to unintentional error or omission on [her] part." The Division sent notices of ineligibility and overpayment assessments.[3]

On August 27, 2021, Ramirez filed her waiver application. In her waiver application, Ramirez stated that she did not provide incorrect details or incorrect information to the Division to cause the overpayment. Ramirez explained that she had failed to respond to the Division's prior requests for information because the notices were sent to her former residence and that, unknown to her, her ex-boyfriend, who remained at the former residence, held her mail for

---

[3] As previously stated, there are five additional appeals relating to Ramirez's Missouri and FPUC unemployment benefits that were raised before the Tribunal. We do not know when Ramirez appealed these other cases because such information is absent in the record on appeal.

months.  Ramirez stated she only became aware of the overpayment determination when she received her mail in April 2022.  Ramirez also stated that she did not update her address in UInteract,[4] because she did not know it would be necessary and the Division made no other attempts to contact her.

In her waiver application, Ramirez asked for waiver because her "main income was cut off" when the Restaurant closed because of the pandemic.  Ramirez further stated that "[i]n order to receive [her] benefits [she] had to claim unemployment against both [the Restaurant] and [the Veterinary Clinic,]" even though she "did not want to claim unemployment against [the Veterinary Clinic], but UInteract would not allow [her] to proceed."  Finally, Ramirez stated that if she worked only at the Veterinary Clinic, she would not have been able to support her family and that nothing she did "was in bad faith or malice."

In September 2022, a Division Deputy reviewed Ramirez's waiver application and denied it because she "did not report [she] had separated during a week claimed."  By failing to report this separation, the Division Deputy found that Ramirez "provided inaccurate details or information which [she] knew or should have known would impact program eligibility and the payment of benefits."

Ramirez appealed the Division Deputy's decision on September 26, 2022.  Ramirez reiterated that UInteract required her to claim unemployment against both the Restaurant and the Veterinary Clinic to receive unemployment benefits even though she did not want to make a benefits claim against the Veterinary Clinic.  Ramirez repeated that she did not claim unemployment insurance benefits in bad faith or with malice.

---

[4]  "UInteract is the Division's online website where individual claimants have their own accounts." *Sanders v. Div. of Emp. Sec.*, 660 S.W.3d 35, 37 n.1 (Mo. App. W.D. 2023) (quoting *Harden v. Div. of Emp. Sec.*, 655 S.W.3d 796, n.3 (Mo. App. S.D. 2022)).

On June 20, 2023, the Tribunal held a hearing on this issue, among several of Ramirez's other appeals. During the hearing, both Ramirez and a Benefits Program Supervisor testified, and, on June 29, 2023, the Tribunal affirmed the Deputy's determination. The Tribunal found that Ramirez was not entitled to waiver of recovery of overpayment of FPUC benefits for the period of April 12, 2020, through July 25, 2020.

Specifically, the Tribunal found, "The competent and substantial evidence showed that while [Ramirez] filed weekly claims for benefits, she failed to report during the week ending April 18, 2020, or several times thereafter, that she had separated from her employer[.]" The Tribunal stated that Ramirez "knew and understood the questions being asked of her regarding job separation" and "presented no competent evidence showing why she did not report being separated from the employer during the week she separated other than she overlooked the questions." Thus, according to the Tribunal, Ramirez was at fault for the overpayment because she "did not establish that she exercised the care that a reasonable person of ordinary prudence would exercise in submitting a weekly claim," and was not entitled to waiver of recovery of overpayment. On August 25, 2023, the Commission affirmed the Tribunal's decision.

Ramirez appeals. Additional facts necessary to the case disposition are included below.

**Standard of Review**

"Section 288.210 governs appellate review of the Commission's decisions in unemployment compensation cases."[5] *Boyd v. Div. of Emp. Sec.*, 687 S.W.3d 44, 47 (Mo. App. E.D. 2024). Section 288.210 permits our Court to "modify, reverse, remand for rehearing, or set aside" the Commission's decision if we find:

---

[5] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, all rule references are to the Missouri Supreme Court Rules, and all regulatory references are to the Missouri Code of State Regulations as currently updated.

(1) That the commission acted without or in excess of its powers;
(2) That the decision was procured by fraud;
(3) That the facts found by the commission do not support the award; or
(4) That there was no sufficient competent evidence in the record to warrant the making of the award.  An appeal shall not act as a supersedeas or stay unless the commission shall so order.

§ 288.120; *Boyd*, 687 S.W.3d at 47.

We are "not bound by the Commission's legal conclusions or application of law, which we review *de novo*, but we defer to the Commission's factual findings, so long as they are supported by competent and substantial evidence in the record."  *Boyd*, 687 S.W.3d at 47.  *See Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003) (stating that we determine whether an award is supported by competent and substantial evidence "by examining the evidence in the context of the whole record.").  "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."  *Hampton*, 121 S.W.3d at 223.  "When, as here, the Commission adopts the decision of the Appeals Tribunal as its own, we consider the Appeals Tribunal's decision to be the Commission's decision for the purposes of our review."  *Miller v. Div. of Emp. Sec.*, 670 S.W.3d 444, 448 (Mo. App. W.D. 2023) (citing *Ekres v. Div. of Emp. Sec.*, 641 S.W.3d 411, 417 (Mo. App. W.D. 2022)).

**Legal Analysis**

While Ramirez raises two points on appeal, we only discuss her second point because it is dispositive.  In Ramirez's second point on appeal, she argues:

The Labor and Industrial Relations Commission abused its discretion and erred in denying [Ramirez]'s Application for a Waiver of Recovery Overpayment due to [Ramirez] being at fault for the overpayment because [she] would be entitled to the waiver pursuant to 8 CSR 10-3.160 where the overpayment was received without fault of [Ramirez] and [she] was not at fault for the overpayment in that there is no competent or substantial evidence that she knowingly withheld or falsely provided information that she knew would affect her right to benefits, that the information allegedly withheld or falsely provided would have affected her

9

right to benefits, and the Division further failed to take into consideration [Ramirez]'s age and physical or mental condition as mitigating factors against finding fault.

As noted by the Division, Ramirez's second point on appeal is multifarious in violation of Rule 84.04. "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Sanders v. Div. of Emp. Sec.*, 660 S.W.3d 35, 41 (Mo. App. W.D. 2023) (quoting *Ritchie v. Silgan Containers Mfg. Corp.*, 625 S.W.3d 787, 798 n.6 (Mo. App. W.D. 2021)). "Multifarious points preserve nothing for appellate review." *Id.*

The Division argues that Ramirez's second point improperly contains two separate contentions: (1) the Commission abused its discretion and (2) the Commission did not have competent or substantial evidence in the record supporting the denial. While Ramirez impermissibly raises several issues in one point, because we prefer to decide cases on their merits and can readily discern her claim of error, we exercise our discretion to address her claim on the merits. *See Sanders*, 660 S.W.3d at 41–42.

Ramirez contends the Commission erred in denying her waiver application because no competent or substantial evidence shows she knowingly withheld or falsely provided information in her original application for FPUC benefits. We agree. No record evidence supports a finding of fault under 8 C.S.R. 10-3.160 on which the Commission denied her application.

Missouri's 8 C.S.R. 10-3.160 sets out the criteria for the waiver of recovery of overpayments under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) that were not obtained through fraud. The rule is intended "to allow those individuals with non-fraud overpayments under the federal coronavirus relief programs to request a waiver of recovery of overpayments and to set forth the criteria under which those requests will be evaluated." 8

10

C.S.R. 10-3.160. The claimant bears the burden "to demonstrate that waiver of recovery is appropriate." 8 C.S.R. 10-3.160(6).

A claimant may be entitled to waiver of recovery of overpayment if "[t]he overpayment was received without fault of the claimant," and "[t]he recovery of the overpayment would be against equity and good conscience." 8 C.S.R. 10-3.160(1)(A)–(B). A claimant who receives or retains benefits and "knew or reasonably should have known he or she was not lawfully entitled to receive" those benefits is at "fault" and is not entitled to waiver. 8 C.S.R. 10-3.160(3)(B). The Division considers the "nature and cause of the overpayment" in determining fault. 8 C.S.R. 10-3.160(3)(A).

> Fault includes, but is not limited to:
>
> 1. Fraud or misrepresentation regarding the claim (a representation of fact, in relation to the claim, that the claimant knew or should have known was false);
> 2. Failure to disclose (failing to disclose a fact, in connection with the claim, that the claimant knew or should have known was significant to the claim); and
> 3. Negligence (failing to exercise the care that a reasonable person of ordinary prudence would exercise in submitting the claim).

8 C.S.R. 10-3.160(3)(C)(1)–(3). "What an individual should have known is determined from the perspective of a reasonable person of ordinary prudence in the same or similar circumstances," and "the division may consider an individual's age and physical or mental condition as mitigating factors against finding fault." 8 C.S.R. 10-3.160(3)(D).

The Tribunal determined that Ramirez was ineligible for waiver because she did not establish by competent and substantial evidence that she was not at fault for causing the overpayment. The Tribunal concluded that Ramirez had "separated" from her previous employer, the Veterinary Clinic, and failed to include this "separation" in her original application for FPUC benefits. Because Ramirez omitted this necessary information (according to the Tribunal), the Tribunal found she did not exercise "the care that a reasonable person of ordinary

11

prudence" would in submitting her claim for FPUC unemployment benefits, therefore finding her at fault under 8 C.S.R. 10-3.160 and denying her waiver application. The Commission affirmed the Tribunal's decision that Ramirez was not entitled to waiver, so we consider the Tribunal's decision to be the Commission's decision for the purposes of our review. *See Miller*, 670 S.W.3d at 448.

We disagree with the Commission's determination that Ramirez was at fault for the overpayment of FPUC benefits because she failed to exercise the care that a reasonable person of ordinary prudence would exercise in submitting her claim for benefits. *See* 8 C.S.R. 10-3.160(3)(C)(3). The record before us does not contain competent or substantial evidence on which the Commission could base its fault determination precluding Ramirez from waiver of recovery of overpayment.

The record on appeal fails to include substantial evidence that Ramirez "separated" from her employer or that she failed to report her "separation" in her application for FPUC benefits to the extent of constituting fault under 8 C.S.R. 10-3.160(3). Because the record on appeal is devoid of any evidence that Ramirez acted other than how a reasonable person of ordinary prudence would in applying or answering questions for FPUC benefits, we find the Commission erred in denying Ramirez's waiver application.

Nowhere in the record before us is the Veterinary Clinic's protest or any testimony from the Veterinary Clinic as to the status of Ramirez's employment at the time she answered the application questions. During the June 2023 hearing, Ramirez testified that she had not separated from the Veterinary Clinic, but asked to be taken off the schedule temporarily in April 2020 due to her personal situation and was told she would be welcomed back. When Ramirez attempted to return, only then was she told she was fired. The Division's own Benefit Program

12

Supervisor's testimony acknowledged Ramirez had asked to be taken off the schedule due to her personal situation and that "whenever [Ramirez] asked to return, she was told she was let go." The transcript is otherwise devoid of any evidence supporting a finding that Ramirez "had separated from her employer" and failed to report this separation during the week of April 18, 2020, in her waiver application.

Additionally, the Appeals Referee stated, in referencing another one of the administrative cases and findings, that Ramirez was "disqualified . . . because [she] left work with the [Veterinary Clinic] voluntarily without good cause attributable to the work or [the Veterinary Clinic]." The Referee then questioned Ramirez about leaving work at the Veterinary Clinic and whether she had appealed that issue. Ramirez responded that, when she left the Veterinary Clinic, she thought she would be returning. Upon questioning by the Referee, she did not know what happened to that appeal and determination.

Meanwhile, in this case, the Benefits Program Supervisor testified that the application for unemployment insurance benefits specifically asks why the claimant is no longer working. The options an applicant may select include working part time, being laid off, having a lack of work, quitting, being discharged, being suspended, and leaves of absence, to which Ramirez selected working part time. The Benefits Program Supervisor clarified that during the normal weekly certifications, the questions are, "did you refuse a job, quit a job, [or] get suspended or discharged," to which Ramirez answered no. The Tribunal found that Ramirez did not remember seeing any questions about "job separation." The evidence in the record does not support a finding that Ramirez answered these questions incorrectly or that she was "separated" from employment at the time she filed her application for benefits.

In her waiver application, Ramirez further stated that she did not want to claim unemployment benefit insurance against the Veterinary Clinic but only against the Restaurant when she was laid off due to the pandemic. Ramirez stated that she was forced to claim unemployment against the Veterinary Clinic because "UInteract would not allow [her] to proceed" to receive benefits without so doing. Further, without such unemployment benefit insurance, Ramirez "would have not been able to support [her] family." Ramirez's technical issues with UInteract is directly contrary to the Commission's finding that she "knew, or reasonably knew, that she was misrepresenting information to the Division [in] failing to disclose her separation" in her FPUC benefits application. Nothing in the record contradicts Ramirez's statements about her issues with the UInteract portal.

The Division presented no evidence that Ramirez's FPUC benefits were impacted by her supposed misrepresentation or omission of facts about her "separation." Based upon the record evidence, Ramirez demonstrated that waiver of recovery of overpayment of FPUC benefits is appropriate. Accordingly, we find the Commission erred in denying Ramirez's waiver application.

Finally, echoing the Eastern District of our Court, "[t]his case depicts a familiar series of unfortunate events that this Court continues to observe in unemployment cases in which claimants, typically unrepresented, are subject to the Division's confusing procedures and communications practices." *Dickerman v. Amazon.com, Inc.*, 689 S.W.3d 559, 565 (Mo. App. E.D. 2024). The Division must improve its procedures and practices to avoid complicated, almost unintelligible, procedural records like this. A record as convoluted as this—with six separate, open appeals for one claimant—wastes judicial time and resources, and hinders timely

14

resolution of unemployment cases.  Again, we encourage the Division's efforts to improve.  *See id.*

**Conclusion**

The Commission's decision is reversed.

Janet Sutton, Judge

W. Douglas Thomson, P.J., and Karen King Mitchell, J. concur.